**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| STEPHEN BUSHANSKY, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) ) | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| GREAT PLAINS ENERGY INCORPORATED, TERRY BASSHAM, DAVID L. BODDE, RANDALL C. FERGUSON, JR., GARY D. FORSEE, SCOTT D. GRIMES, THOMAS D. HYDE, ANN D. MURTLOW, SANDRA J. PRICE, and JOHN J. SHERMAN, ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

Plaintiff Stephen Bushansky ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

<u>**NATURE OF THE ACTION**</u>

1.     This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Great Plains Energy Incorporated ("Great Plains" or the "Company") against Great Plains, the members of Great Plains' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction announced on July 10, 2017, pursuant to which Great Plains and Westar

1

Energy, Inc. ("Westar") will combine in a stock-for-stock merger-of-equals (the "Proposed Transaction").

2.    On July 9, 2017, Great Plains entered into an amended and restated agreement and plan of merger (the "Merger Agreement")[1] with Westar, Monarch Energy Holding, Inc. ("Monarch"), and King Energy, Inc. ("Merger Sub").  Pursuant to the terms of the Merger Agreement, Great Plains and Westar will be combined under a new holding company, Monarch, which will have a new name, yet to be established.  Great Plains stockholders will receive 0.5981 shares of Monarch stock for each share of Great Plains that they own (the "Merger Consideration").  Each share of Westar common stock will be converted into the right to receive one share of Monarch common stock.  As a result of the Proposed Transaction, Great Plains will merge with and into Monarch, with Monarch continuing as the surviving corporation, and Merger Sub will merge with and into Westar, with Westar continuing as the surviving corporation.  Following the consummation of the Proposed Transaction, Monarch will be the direct parent of Westar and Great Plains' direct subsidiaries.  Following completion of the merger, Great Plains and Westar stockholders will own approximately 47.5% and 52.5% of the combined company, respectively.  The Proposed Transaction has a total equity value of approximately $14 billion.

3.    On October 10, 2017, Great Plains filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the United States Securities and Exchange Commission ("SEC") in

---

[1] The Merger Agreement is an amendment to an agreement and plan of merger dated May 29, 2016 (the "Original Merger Agreement") among Great Plains, Westar, and GP Star, Inc. ("GP Star"). GP Star withdrew from the Original Merger Agreement and is a party to the Merger Agreement solely for the purpose of withdrawing from the Original Merger Agreement. Under the terms of the Original Merger Agreement, Westar's stockholders would have received $51.00 in cash and $9.00 in Great Plains common stock for each share of Westar common stock.  On April 19, 2017, the Kansas Corporation Commission ("KCC") issued an order finding that the original proposed merger was not in the public interest.

connection with the Proposed Transaction. The Proxy, which recommends that Great Plains stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Great Plains, Westar and Monarch's financial projections, relied upon by Great Plains' financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Lazard Frères & Co. LLC ("Lazard") in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman Sachs and Lazard; and (iii) Goldman Sachs' and Lazard's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act, as Great Plains stockholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, Great Plains' public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of

3

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Great Plains is headquartered and incorporated in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Great Plains.

9. Great Plains is a Missouri corporation and maintains its principal executive offices at 1200 Main Street, Kansas City, Missouri 64105. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "GXP."

10. Defendant Terry Bassham ("Bassham") has served as President and Chief Executive Officer ("CEO") of the Company since May 2011 and June 2012, respectively, and as Chairman of the Board and a director since May 2013 and 2011, respectively.

11. Defendant David L. Bodde ("Bodde") has served as a director of the Company since 1994.

12. Defendant Randall C. Ferguson, Jr. ("Ferguson") has served as a director of the Company since 2002.

13. Defendant Gary D. Forsee ("Forsee") has served as a director of the Company since 2008.

14. Defendant Scott D. Grimes ("Grimes") has served as a director of the Company

4

since 2014.

15.     Defendant Thomas D. Hyde ("Hyde") has served as a director of the Company since 2011.

16.     Defendant Ann D. Murtlow ("Murtlow") has served as a director of the Company since 2013.

17.     Defendant Sandra J. Price ("Price") has served as a director of the Company since 2016.

18.     Defendant John J. Sherman ("Sherman") has served as a director of the Company since 2009.

19.     Defendants referenced in paragraphs 10 to 18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Westar is a Kansas corporation, with its principal executive offices located in Topeka, Kansas.  Westar's common stock is traded on the New York Stock Exchange under the ticker symbol "WR."

21.     Monarch is a Missouri corporation and a direct wholly owned subsidiary of Great Plains, which was formed solely for the purpose of effectuating the Proposed Transaction.

22.     Merger Sub is a Kansas corporation and a wholly owned subsidiary of Monarch.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Great Plains common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate

5

families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

25.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of October 6, 2017, there were 215,660,691 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Great Plains or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

26.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     A class action is superior to all other available methods for the fair and efficient

6

adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

30. Kansas City, Missouri-based Great Plains is the holding company for two vertically integrated electric utilities – Kansas City Power & Light and KCP&L Greater Missouri Operations Company, which operate under the brand name KCP&L. Through its subsidiaries, Great Plains generates, transmits, distributes, and sells electricity in 47 counties in Missouri and Kansas. The Company has approximately 6,500 megawatts of generating capacity. Great Plains sells electricity to approximately 855,700 customers in western Missouri and eastern Kansas, including approximately 753,500 residences and 99,700 commercial firms, as well as 2,500 industrials, municipalities, and other electric utilities.

31. On May 31, 2016, the Company announced the Original Merger Agreement, pursuant to which Great Plains would acquire Westar in a combined cash and stock transaction with an enterprise value of approximately $12.2 billion, including total equity value of approximately $8.6 billion.

32. On April 19, 2017, the KCC issued an order finding the transaction contemplated by the Original Merger Agreement not in the public interest and rejecting Great Plains' application to acquire Westar.

7

33.     Over the next several months, Great Plains and Westar renegotiated the terms of the Original Merger Agreement to address the KCC's objections identified in the April 19, 2017 KCC order.

34.     The parties negotiated a revised stock-for-stock merger of equals transaction and on July 9, 2017, following presentations by Great Plains' financial advisors, Goldman Sachs and Lazard, the Board approved the Merger Agreement.

**The Proposed Transaction**

35.     On July 10, 2017, Great Plains and Westar issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

> KANSAS CITY, Mo. and TOPEKA, Kan.--(BUSINESS WIRE)--Jul. 10, 2017-- Westar Energy, Inc. (NYSE: WR) and Great Plains Energy Incorporated (NYSE: GXP) today announced that both companies' boards of directors have unanimously approved a revised transaction that involves no premium paid or received with respect to either company, no transaction debt, no exchange of cash, and is a stock-for-stock merger of equals, creating a company with a combined equity value of approximately $14 billion. The new, combined company will provide electric utility service to approximately one million Kansas customers and nearly 600,000 customers in Missouri. The combined company will have a new name, yet to be established.

> "The logic of combining these two companies is compelling. We are confident we have addressed the regulatory concerns with our originally-proposed transaction. We appreciate the Commission welcoming a different way to combine these two companies, preserving the unique value available only through this particular business combination," said Mark Ruelle, president and chief executive officer of Westar Energy. "This merger creates a stronger company for our customers and a much more valuable company for shareholders, with no additional acquisition debt, along with sustaining commitments to Topeka and Kansas. It is a win-win. For our shareholders, it means a large increase in their dividend. We also expect significant earnings accretion and a larger and stronger earnings growth platform than we could achieve on our own. The company and its utilities will continue to have strong investment grade credit ratings."

> Westar Energy and Great Plains Energy will merge to form a new holding company, which will operate regulated electric utilities in Kansas and Missouri. Operating headquarters will be in both Topeka, Kansas, and Kansas City, Missouri. Corporate headquarters will be in Kansas City, Missouri.

8

"We are pleased to announce a revised agreement with Westar Energy that we believe directly addresses regulatory concerns with our originally-proposed transaction, while increasing the long-term value and upside opportunity for our shareholders, customers, communities and employees," said Terry Bassham, chairman, president and chief executive officer of Great Plains Energy. "We power our communities – by generating energy, but also with the jobs we support, the value we create for shareholders, and the community support we provide. Combining Great Plains Energy and Westar Energy into one stronger, more diversified regulated utility has compelling strategic, operational and financial benefits. Together, we expect to deliver significantly more value to our shareholders than we can alone."

**Key Terms of the Amended Merger Agreement**

Under the terms of the agreement, Westar Energy shareholders will exchange each share of Westar Energy common stock for a share in the new holding company. Great Plains Energy shareholders will receive .5981 shares of common stock in the new holding company for each Great Plains Energy share. The transaction has a total equity value of approximately $14 billion. It is structured to permit a tax-free exchange of shares. No transaction debt will be incurred. The exchange ratio reflects the agreed-upon ownership split between the two companies. Following completion of the merger, Westar Energy shareholders will own approximately 52.5 percent and Great Plains Energy shareholders will own approximately 47.5 percent of the combined company. The agreement provides that, upon closing, the new holding company expects to set its initial common dividend at a level which maintains the current dividend for Great Plains Energy shareholders. This will result in approximately a 15 percent dividend increase for Westar Energy shareholders.

In connection with the agreement, Great Plains Energy will redeem all of the previously issued debt and convertible preferred stock it issued in contemplation of the previous plan to acquire Westar Energy. Due to the revised nature of this transaction, Great Plains Energy and the Ontario Municipal Employees Retirement System (OMERS) have agreed to terminate their preferred convertible equity commitment. After these financial transactions are completed, the companies anticipate that Great Plains Energy will have not less than $1.25 billion in cash on its balance sheet. After the closing of the merger, the combined company anticipates repurchasing common stock to return excess cash to shareholders and maintain a balanced consolidated capital structure.

**Leadership**

Upon closing, Ruelle will become the non-executive chairman of the new company board. Bassham will serve as president and chief executive officer of the new company and will also serve as a member of the board of directors. Senior

management roles will be shared by executives from both companies. Among these are: Westar's current senior vice president and chief financial officer (CFO), Tony Somma, will become executive vice president and CFO. Kevin Bryant, current Great Plains Energy senior vice president of finance and strategy and CFO will become executive vice president and chief operating officer. Greg Greenwood, Westar's senior vice president of strategy, including regulatory affairs, will become the new company's executive vice president of strategy and chief administrative officer, responsible for regulatory affairs and merger savings, among other responsibilities.

The board of directors will consist of an equal number of directors nominated from each company, including Bassham from the Great Plains Energy board and Ruelle from the Westar Energy board. The lead independent director will be Charles Q. Chandler, IV, currently Westar Energy's independent chairman of the board.

**The Proxy Contains Material Misstatements or Omissions**

36.    The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Great Plains' stockholders.  The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

37.    Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Great Plains, Westar and Monarch's financial projections, relied upon by Great Plains' financial advisors, Goldman Sachs and Lazard in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman Sachs and Lazard; and (iii) Goldman Sachs' and Lazard's potential conflicts of interest.

***Material Omissions Concerning the Great Plains, Westar and Monarch Financial Projections***

10

38.    The Proxy omits material information regarding the Great Plains and Monarch projections prepared by Great Plains management and the Westar projections prepared by Westar management.  The Proxy provides:

> In connection with rendering the opinion described above and performing its related financial analyses, Goldman Sachs reviewed, among other things:
>
> * * *
>
> - certain internal financial analyses and forecasts for Westar Energy prepared by the management of Westar Energy, certain internal financial analyses and forecasts for Great Plains Energy prepared by the management of Great Plains Energy, and certain financial analyses and forecasts for Monarch Energy prepared by the management of Great Plains Energy, in each case, as approved for Goldman Sachs' use by Great Plains Energy (referred to in this section as the "Forecasts"), and certain operating efficiencies projected by the management of Great Plains Energy to result from the mergers, as approved for Goldman Sachs' use by Great Plains Energy (referred to in this section as the "Efficiencies").
>
> * * *
>
> In connection with its opinion, Lazard:
>
> - Reviewed the June 2017 financial forecasts and other data prepared by Great Plains Energy relating to the business of Great Plains Energy, the June 2017 financial forecasts and other data prepared by Westar Energy relating to the business of Westar Energy and the June 2017 projected efficiencies and strategic, financial, operational and other benefits, including the amount and timing thereof, anticipated by the managements of Great Plains Energy and Westar Energy to be realized from the mergers

Proxy at 85, 94.  The Proxy further discloses that in connection with each of their standalone discounted cash flow analyses of Great Plains and Westar, and Goldman Sachs' discounted cash flow analysis of Monarch, Goldman Sachs and Lazard relied upon the Westar projections prepared by Westar management and the Great Plains and Monarch projections prepared by Great Plains management, each of which were provided to Goldman Sachs and Lazard by Great Plains.  *See id.* at 88-89, 99.  However, the Proxy fails to disclose Great Plains' or Westar's unlevered, after-tax free cash flows or the constituent line items underlying the unlevered, after-

11

tax free cash flows. Moreover, the Proxy wholly omits Great Plains management's projections for Monarch as well as the "certain operating efficiencies projected by the management of Great Plains [ ] to result from the mergers, as approved for Goldman Sachs' use by Great Plains []
(referred to . . . as the 'Efficiencies')." *Id.* at 85.

39.     In addition, the Board agreed to a closing condition in the Merger Agreement providing that Westar's obligation to complete the Proposed Transaction is subject to Great Plains not having "less than $1.25 billion in cash or cash equivalents on its balance sheet [as of the Effective Time.]" *Id.* at A-56 (Merger Agreement, Section 7.02(h)). Although the Proxy discloses that the pro forma combined company is anticipated to have "[e]stimated combined company excess cash of $1.25 billion at closing . . .", the Proxy fails to provide Great Plains stockholders with any information concerning the amount of cash or cash equivalents Great Plains expects to have at closing.

40.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisors in support of their fairness opinions.

41.     The omission of this material information renders the Proxy false and misleading, including, *inter alia*, the following sections of the Proxy: (i) "Opinion of Great Plains Energy's Financial Advisors;" and (ii) "Forward-Looking Financial Information."

***Material Omissions Concerning Goldman Sachs' and Lazard's Financial Analyses***

42.     The Proxy describes Goldman Sachs' and Lazard's fairness opinions and the various valuation analyses they performed in support of their opinions. However, the description of Goldman Sachs' and Lazard's fairness opinions and analyses fails to include key inputs and

assumptions underlying these analyses. Without this information, as described below, Great Plains' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman Sachs' and Lazard's fairness opinions in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Great Plains' stockholders.

43. For example, with respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Westar Energy Standalone*, the Proxy fails to disclose: (i) Westar's unlevered, after-tax free cash flows for years 2017 through 2022 as used by Goldman Sachs in its analyses, as well as the definition of unlevered, after-tax free cash flows and constituent line items underlying the unlevered, after-tax free cash flows; (ii) Westar's net debt as of March 31, 2017 as used by Goldman Sachs in its analyses; (iii) Goldman Sachs' basis for applying terminal EBITDA multiples ranging from 9.00x to 10.75x; and (iv) the inputs used to derive the range of discount rates of 3.50% to 4.50%.

44. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Great Plains Energy Standalone*, the Proxy fails to disclose: (i) Great Plains' unlevered, after-tax free cash flows for years 2017 through 2022 as used by Goldman Sachs in its analyses, as well as the definition of unlevered, after-tax free cash flows and constituent line items underlying the unlevered, after-tax free cash flows; (ii) Great Plains' net debt as of March 31, 2017 as used by Goldman Sachs in its analyses; (iii) Goldman Sachs' basis for applying terminal EBITDA multiples ranging from 8.25x to 9.75x; and (iv) the inputs used to derive the range of discount rates of 3.75% to 4.75%.

45. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*

13

– *Monarch Energy*, the Proxy fails to disclose: (i) Monarch's unlevered, after-tax free cash flows for years 2017 through 2022 as used by Goldman Sachs in its analyses, as well as the definition of unlevered, after-tax free cash flows and constituent line items underlying the unlevered, after-tax free cash flows; (ii) the projected Efficiencies provided by Great Plains management and relied upon by Goldman Sachs in its analysis; (iii) Goldman Sachs' basis for applying terminal EBITDA multiples ranging from 8.75x to 9.75x; and (iv) the inputs used to derive the range of discount rates of 3.50% to 4.50%.

46.     With respect to Goldman Sachs' *Selected Companies Analysis*, the Proxy fails to disclose any information regarding the analysis of the selected companies, including the individual multiples and financial metrics for the companies observed by Goldman Sachs in the analysis. A fair summary of such an analysis requires the disclosure of the individual multiples for each company utilized or, at a minimum, the high, low, mean and median multiples. Moreover, as Goldman Sachs failed to select and apply multiples to the Proposed Transaction, the individual multiples are critical for Great Plains stockholders to assess the Proposed Transaction.

47.     In addition, Goldman Sachs performed an *Illustrative Present Value of Future Share Price Analysis* of Great Plains common stock assuming Great Plains continued to operate as a standalone and of Monarch stock after application of the Great Plains exchange ratio assuming consummation of the Proposed Transaction. The analysis is designed to provide an indication of the present value of a theoretical future value of the Company's equity as a function of the Company's or, in the case of the present value of the future price per share of Monarch common stock after application of the Great Plains exchange ratio, Monarch's estimated future earnings, estimated dividends and assumed price to future earnings per share

14

multiple. The Proxy fails, however, to disclose the Company's projected dividends used in the analysis as well as Monarch's projected earnings per share and dividends used in the analysis. The Proxy further fails to disclose the interest rates Goldman Sachs used in the analysis as well as the underlying inputs.

48.     With respect to Lazard's *Discounted Cash Flow Analysis* of Great Plains, the Proxy fails to disclose: (i) Great Plains' unlevered free cash flows for years 2017 through 2022 as used by Lazard in its analyses and the constituent line items underlying the unlevered free cash flows, including "working capital and other items" and, to the extent it differs from utility capital expenditures, "capital expenditures and other investments"; (ii) the inputs used to derive the range of discount rates of 4.50% to 5.00%; (iii) the projection metric to which the terminal multiples were applied in the calculation of the terminal value; and (iv) the range of illustrative terminal values for the Company

49.     With respect to Lazard's *Discounted Cash Flow Analysis* of Westar, the Proxy fails to disclose: (i) Westar's unlevered free cash flows for years 2017 through 2022 as used by Lazard in its analyses and the constituent line items underlying the unlevered free cash flows, including "working capital and other items" and, to the extent it differs from utility capital expenditures, "capital expenditures and other investments"; (ii) the inputs used to derive the range of discount rates of 4.25% to 5.00%; (iii) the projection metric to which the terminal multiples were applied in the calculation of the terminal value; and (iv) the range of illustrative terminal values for the Company.

50.     Finally, with respect to Lazard's *Selected Comparable Companies Analysis* of Great Plains and Westar the Proxy fails to disclose the individual multiples for each of the selected public companies analyzed by Lazard, as well as the financial performance metrics for

each selected company.

51. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52. The omission of this material information renders the Proxy false and misleading, including, *inter alia*, the following sections of the Proxy: (i) "Opinion of Great Plains Energy's Financial Advisors;" and (ii) "Certain Great Plains Unaudited Prospective Financial Information."

### *Lazard's and Goldman Sachs' Potential Conflicts of Interest*

53. Further, the Proxy fails to disclose material information concerning the potential conflicts of interest faced by Lazard and Goldman Sachs in acting as the Company's financial advisors.

54. The Proxy sets forth:

> In connection with Lazard's services as financial advisor, Great Plains Energy agreed to pay Lazard a financial advisory fee of $100,000, which accrued on May 23, 2017 and is payable on December 31, 2017. Great Plains Energy also agreed to pay Lazard a fee of $2,500,000 in connection with Lazard's services as financial advisor, which became payable upon the rendering of Lazard's opinion.

The Proxy fails, however, to disclose any information concerning the services Lazard has provided to Great Plains and Westar, or their affiliates, in the past two years, and the amount of compensation received for such services.

55. Additionally, the Proxy sets forth that "Great Plains [ ] and Lazard have also agreed that, with respect to the period after December 31, 2017, Great Plains [ ] will pay Lazard an annual financial advisory fee in an amount to be mutually agreed in good faith." Proxy at 102. The Proxy fails, however, to disclose when the agreement between Great Plains and Lazard

16

was first reached and the estimated range of compensation Lazard expects to receive for its annual financial advisory fee.

56.     Similarly, the Proxy discloses that "[d]uring the two year period ended July 9, 2017, Goldman Sachs has not been engaged by Westar [ ] or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has received compensation," but fails to disclose the services Goldman Sachs provided to Westar for which Goldman Sachs was not compensated.

57.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

58.     The omission of this information renders the statements in the "Opinion of Great Plains Energy's Financial Advisors" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

59.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

60.     Plaintiff repeats all previous allegations as if set forth in full.

17

61.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

62.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. The Proxy misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company and combined company, the financial analyses performed by the Company's financial advisors, and potential conflicts of interest faced by the Company's financial advisors. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

63.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

64.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

65.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

18

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

66.     Plaintiff repeats all previous allegations as if set forth in full.

67.     The Individual Defendants acted as controlling persons of Great Plains within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Great Plains and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

68.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

70.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy purports to describe the various issues and information that they

19

reviewed and considered — descriptions which had input from the Individual Defendants.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Great Plains, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Great Plains stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 13, 2017

Respectfully submitted,

/s/ *Bryce B. Bell*

Bryce B. Bell    MO#66841
**BELL LAW, LLC**
2600 Grand Blvd., Ste. 580
Kansas City, Missouri 64108
T:  (816) 886-8206
F:   (816) 817-8500
Bryce@BellLawKC.com


*Pending Pro Hac Vice Admission*
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
Alexandra E. Eisig
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, New York 10036
T:  (212) 682-3025
F:   (212) 682-3010
racocelli@weisslawllp.com
mrogovin@weisslawllp.com
kkeenan@weisslawllp.com
aeisig@weisslawllp.com


**Attorneys for Plaintiffs**